WIJSMULLER BV, Plaintiff,

v.

TUG BENASQUE, her engines, boilers, tackle, etc. in rem Transportes Navales in personam, Defendant.

Civ. A. No. 81–239.

United States District Court,
D., Delaware.

Dec. 28, 1981.

Robert Aulgur, Jr., of Wilson & Whittington, Wilmington, Del., for plaintiff;

Alfred J. Kuffler and Vernon C. Miller, Jr., of Palmer Biezup & Henderson, Philadelphia, Pa., of counsel.

Peter M. Sieglaff, David B. Brown, and Robert K. Payson, of Potter Anderson & Corroon, Wilmington, Del., for defendant; James F. Young, of Krusen Evans & Byrne, Philadelphia, Pa., of counsel.

## MEMORANDUM RE MOTION OF DEFENDANTS TO DISMISS THE COMPLAINT AND FOR OTHER RELIEF

STEEL, Senior District Judge.

On April 28, 1981, plaintiff chartered the tug Benasque from the defendant, its owner, to tow the M/A George S, a disabled tanker, from a point where it had broken down in the Atlantic Ocean to the Delaware Bay. On June 5, 1981, plaintiff brought an action against defendant *in rem* and *in personam* alleging that the Benasque was not properly founded or seaworthy to undertake the towage with the result plaintiff was damaged in the amount of $155,000. On June 7, 1981, plaintiff had the Benasque attached under a warrant of arrest while it was in the anchorage of lower Delaware Bay. On June 17, 1981, a stipulation was entered into by the parties agreeing to the release of the Benasque in consideration for a letter of credit from the Manufacturers Hanover Bank of New York set forth in a telex dated June 16, 1981, to the attorneys of the plaintiff, and thereafter, on the same date, the Court ordered a release of the vessel.

The agreement between the parties under which plaintiff was operating the Benasque contained a forum selection clause which read:

"8.2 Any disputes regarding this Contract which cannot be settled amicable [sic] by the parties hereto shall with the exclusion of any other Court, be submitted to the High Court of Justice [Admiralty Court] London, England (but not excluding appeals) unless Transportes

[the defendant] voluntarily submits to some other jurisdiction."

The defendant has moved to dismiss the complaint and to vacate the warrant of arrest on the ground that because of the forum selection clause the warrant had been improperly issued.

■ At the argument plaintiff stated that it would honor the forum selection clause and that a trial in the High Court of Justice in London would not be strongly inconvenient to it. Consequently; under the principle established in *Bremen v. Zapata Off Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1973), the action will be stayed for a reasonable time to enable an action to be commenced in London for the purpose of settling the disputes between the parties.

Defendant argues that the seizure of the vessel was improper because of the forum selection clause and consequently the letter of credit given to secure the release of the vessel can be of no effect and should be cancelled. When the vessel was seized the Court had subject matter jurisdiction under 28 U.S.C. § 1333, it had jurisdiction over the property of the defendant, and venue was proper under Supplemental Admiralty and Maritime Rule F(9). When the seizure occurred defendant had not made known to plaintiff its determination to litigate in London. Until it determined to do so the action could well have proceeded in Delaware. The forum selection clause, unlike that in *Bremen*, gave defendant this choice.[1] At the time when the vessel was seized it was proper. The first notice plaintiff had of defendant's intention to seek relief in the London court was when it filed its motion to dismiss. Furthermore, when the defendant entered its appearance as claimant and owner of the Benasque it "expressly restricted [its appearance] to the defense of the claims now alleged herein." (Doc. 5). When it thus limited the purpose of its appearance, it was familiar with the forum selection clause. It can be plausibly

---

1. In *Bremen* the clause stated (407 U.S. at 2, 92 S.Ct. at 1909):

"Any dispute arising must be treated before the London Court of Justice."

argued that thereby defendant waived any claim that the seizure and detention of the vessel was invalid.

The *Bremen* case did not deal with the question of the effect which a dismissal (or removal) of an action because of a forum selection clause might have upon security posted for the release of a vessel. That question was not before the Court. *Sanko Steamship Co. v. Newfoundland Refining Company, Ltd.*, 411 F.Supp. 285, 286 (D.C.S. D.N.Y.1976). The defendant relies upon the *Sanko* case to establish that when a dismissal of an admiralty action takes place because a plaintiff has not complied with a forum selection provision no basis exists for continuing an attachment of a defendant's property. In *Sanko* the attachment had taken place under New York law pursuant to Admiralty and Maritime Claims Rule B(1) and F.R.Civ.P. 64. When the action was dismissed the Court held that the attachment was unavailable under the New York attachment laws.

The *Sanko* case has no relevance to the instant case. Here the letter of credit which was posted by the defendant expressly contemplated that litigation might proceed in Delaware or elsewhere. It stated, "if that litigation [on the claim set forth in the complaint] either in Wilmington, Delaware or elsewhere proceeds to an award" a draft for the amount due plaintiff may be drawn on the letter of credit.

The *Sanko* case pointed to nothing in the New York law which would make the attachment binding in the event of a dismissal of the action and proceedings in some other forum. Here the letter of credit did.

The affidavit of Alfred J. Kuffler, attorney for plaintiff, stated without contradiction: (Doc. 15) During the course of negotiations between counsel the question arose as to the continued viability of any security to be posted as a result of the arrest of the tug if the matter should be transferred to London. (¶ 7). As a result of the negotiations regarding the form of the security it was agreed that the security would stand even if the matter were transferred to London. These discussions took place on June 10, 1981. (¶ 9). On June 12, the defendant wrote plaintiff stating that the defendant believed the seizure of the vessel and its detention were improper but it contained no reference to the forum selection clause nor did it assert that the seizure violated the clause. (¶ 10). On June 15, plaintiff wrote defendant and stated (¶ 11):

> "In accordance with our several telephone discussions regarding the terms of the letter of credit to be issued, we confirm this letter of credit shall be deemed valid and enforceable even if the matter is ultimately transferred to the appropriate Court in London, and if such transfer is effected, the letter will be suitably amended."

Prior to the issuance of the letter of credit on June 16, plaintiff received no objection from defendant to plaintiff's letter of June 15, or any denial that the letter accurately reflected the contents of the discussions between them (¶ 12). The understanding of the parties was reflected in the terms of the letter of credit which the defendant provided.

■■ It is true that the letter of credit stated that it was given "with prejudice to any rights or defenses which the said Benasque or her owner/operator may have by reason of any statutes in effect, rights to limit liability or otherwise, none of which is to be regarded as waived." When plaintiff seized the Benasque it did not rely upon any "statute" or "right to limit liability." The words "or otherwise" should not be construed to embrace defendant's claim that the seizure was wrongful because of the forum selection clause. The application of the principle of construction *ejusdem generis* forecloses this interpretation. Furthermore, the reservation of rights clause cannot be interpreted to justify a cancellation of the letter of credit in view of its provision that it is intended to secure a final judgment or settlement in Delaware or elsewhere.

Defendant has filed an answer and counterclaim against plaintiff for damages estimated to be $50,000 for all loss suffered by reason of the alleged improper arrest and issuance of the complaint, including the cost of securing the guarantee to release the vessel and attorneys' fees. These are losses alleged to have been incurred by defendant in performing the redelivery of the vessel as required by the April 28, 1981 contract and damages incurred by defendant as a result of the improper arrest and bringing suit in the allegedly improper forum. Defendant's motion to dismiss alternatively moves to require plaintiff to post countersecurity in the amount of $50,000 representing claims alleged in the counterclaim.[2] In the circumstances, Supplemental Rules of Admiralty and Maritime Claims Rule E(7) authorizes the Court to grant the countersecurity relief. Since the Court has determined to stay the action pending a transfer to the High Court of Justice (Admiralty Court) of London, England, this Court, in its discretion, will deny without prejudice the countersecurity demanded by defendant.[3] This will permit the English court, when and if the action is begun in it, to take such action as it may determine with respect to the countersecurity relief which defendant seeks. Plaintiff's motion to dismiss the counterclaim will await action by the English court, if the action is begun there.

---

2. Actually, the motion was filed before the counterclaim was filed but the Court will treat the motion as if it had been filed after the counterclaim was filed.

3. This makes it unnecessary to take action with reference to plaintiff's motion to dismiss the counterclaim.