**FURNESS WITHY (CHARTERING), INC., PANAMA, Plaintiff-Appellant,**

v.

**WORLD ENERGY SYSTEMS ASSOCIATES, INC., Wesa, Inc., Defendants,**

**Hemmert Shipping Corporation, Defendant-Appellee.**

**No. 84–7742.**

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1985.

---

Robert B. Fougner, Mark Jaffe, New York City, for Furness Withy, etc.

**804**

Alex F. Lankford, III, Mobile, Ala., for World Energy & Wesa, Inc., Hemmert Shipping & Texas Chartering.

Before VANCE and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

HENDERSON, Circuit Judge:

This complicated admiralty case arises out of an unusual incident that occurred in Mobile, Alabama on August 10, 1981. On that day, an inexperienced seller of coal, who is not a party to this appeal, was under binding contract with two different companies to ship coal from Mobile to Taiwan. This appeal involves the determination of which of those two companies must sustain the loss growing out of the dual contracts.

On November 27, 1980, Dr. Paul Liu, a director of World Energy Systems Associates, Inc. (World Energy) contracted to supply 50,000 metric tons of coal to a Taiwanese company, Chia Hsin Cement Corp. (Chia Hsin). World Energy was to be compensated for the coal through a letter of credit negotiable at the Citizens & Southern Bank in Atlanta, Georgia. Before World Energy could receive the proceeds from the letter of credit, it was required to furnish to the bank various instruments including descriptions of the coal, bills of lading and a cargo manifest.

In May, 1981, World Energy formed a subsidiary corporation under Alabama law. The district court found that this subsidiary, WESA, Inc. (WESA) was the alter ego of World Energy. This finding is not challenged by either side. In May, 1981, World Energy assigned to WESA all of its interest in the Chia Hsin coal contract. This contract is the only asset ever owned by WESA.

In June, 1981, Dr. Liu began searching for a ship to transport the coal to Taiwan. On June 30, 1981, acting on behalf of WESA, he entered into a contract with the appellant, Furness Withy (Chartering) Inc. Panama (Furness Withy), a Panamanian corporation with its principal place of business in Hong Kong. The contract of affreightment (COA) called for two shipments of coal from the United States to Taiwan at a freight rate of $36.00 per metric ton. The first shipment was to be made no later than August, 1981. The COA provided that WESA could cancel the contract if Furness Withy failed to provide an adequate vessel ready to load the coal in Mobile, Alabama by 2400 hours on August 10, 1981.

In early July, 1981, Dr. Liu turned to the problem of acquiring the coal that he had contracted to sell to Chia Hsin. He signed a contract to buy 7,500 tons of coal from Moss Port, Inc., an Alabama coal producer. He also contracted with Warrior Tombigbee Transport Company, Inc. (Warrior Tombigbee) to barge the coal down to Mobile where the coal was to be loaded upon the ship provided by Furness Withy. Because WESA still had no assets, Dr. Liu agreed to sell this coal for $100,000.00 to Wilson Financial Corp. (Wilson) which gave WESA an option to repurchase it for $109,-000.00 within 30 days of the contract date. On July 14, 1981, WESA and Wilson entered into a similar repurchase agreement for an additional 5,000 metric tons of coal.

On July 17, 1981, Furness Withy nominated the M/V CONTINENTAL CHARTERER (CONTINENTAL) as the ship to transport the coal to Taiwan. Furness Withy advised Dr. Liu that the CONTINENTAL's estimated date of arrival at Mobile was August 4, 1981. On July 22, 1981, WESA accepted the nomination.

In early August, 1981, it became apparent to all that the CONTINENTAL would not be able to load the coal until August 12, 1981 if it kept on its intended itinerary. Therefore, Furness Withy attempted to negotiate with Dr. Liu for a later cancellation date in exchange for a lower freight rate. Although Dr. Liu considered this proposal, the owners of the CONTINENTAL would not correspondingly reduce its rate to Fur-

ness Withy for the use of the ship. This refusal to lower the freight charges aborted any further effort by Furness Withy to extend the CONTINENTAL's shipping date.

On August 5, 1981, Dr. Liu learned that Furness Withy was looking for another vessel to transport the coal to Taiwan. Prior to this time, he had been negotiating with the appellees, Hemmert Shipping Corp. (HSC) and Texas Chartering, Inc. (TCI) to finance the repurchase of the coal from Wilson. Dr. Liu needed this loan because WESA had no assets or other sources of payment and Chia Hsin's letter of credit was not payable until the coal was loaded on the ship. HSC and TCI agreed to provide this financing if Dr. Liu and WESA would use one of their ships to transport the coal to Taiwan.

On August 6, 1981, WESA and HSC–TCI [1] entered into an agreement whereby HSC–TCI agreed to advance WESA $500,-000.00 (later $600,000.00) and charter another ship, the EDCO, to WESA at the rate of $31.50 a ton. WESA was required to pay interest on the loan at 2% above New York prime rate. WESA also agreed to give HSC–TCI the right to charter all the vessels WESA needed for a period of 60 months. And, WESA agreed to assign to HSC–TCI the proceeds from Chia Hsin's letter of credit as security for the loan. Dr. Liu also requested that the contract of affreightment with HSC–TCI be made subject to the valid cancellation of its COA with Furness Withy but HSC–TCI refused to accept this condition.

On the afternoon of August 6, 1981, after the new contract of affreightment with HSC–TCI was executed, the CONTINENTAL's itinerary was changed so that it could meet the August 10th deadline. This fact was communicated to Dr. Lui who, in turn, so advised an officer of HSC–TCI. Meanwhile, also on August 6, 1981, the Birmingham Trust National Bank began receiving transfers of money from HSC–TCI in trust to pay for various shipping expenses.

The next day, August 7, 1981, WESA gave HSC–TCI a power of attorney over the negotiation of the letter of credit and formally assigned over $600,000.00 of the proceeds of the letter of credit to HSC–TCI. These proceeds were to be used to reimburse HSC–TCI for the funds it advanced to purchase and transport the coal. Later, WESA assigned an additional $100,-862.96 of the proceeds because of an additional loan from HSC–TCI to WESA.

The agreement between WESA and HSC–TCI contemplated that HSC–TCI would purchase all of the coal and provide for its transportation to Mobile. Consequently, HSC–TCI retained all of the documents of title and bills of lading required to negotiate Chia Hsin's letter of credit.

At 9:10 a.m. on August 10, 1981, the CONTINENTAL arrived in Mobile ready to load coal in accordance with the first shipping contract. At 9:55, WESA repudiated the Furness Withy COA by falsely claiming that the CONTINENTAL was not ready to take on the coal.

After this repudiation, Furness Withy immediately instituted attachment proceedings in the United States District Court for the Southern District of Alabama against the coal and in Atlanta against the letter of credit. Furness Withy also filed this action in the Southern District of Alabama against World Energy and WESA for fraud and breach of contract and against HSC–TCI for tortious interference with contractual relations. [2] HSC–TCI responded with counterclaims and crossclaims against Furness Withy for wrongful attachment, conversion and tortious interference with business and property rights. [3] Pursuant to 9

---

1. HSC and TCI became joint venturers and therefore will be referred to as HSC–TCI.

2. Warrior Tombigbee, which had possession of the coal at the time the attachment issued, intervened in this action claiming the attachment was unlawful. Warrior Tombigbee is not a party to this appeal.

3. HSC–TCI's claim of tortious interference with business and property rights was not resolved

U.S.C. § 8, Furness Withy reserved its right to submit to arbitration its claims for breach of contract against WESA. After a bond of $210,000.00 was posted in the United States District Court for the Northern District of Georgia by WESA and HSC–TCI, that case was transferred to the district court in the Southern District of Alabama and consolidated with the first action.

On August 14, 1981, Dr. Liu and representatives of HSC–TCI met with Furness Withy in the federal district court in Mobile but Furness Withy did not attempt to serve them with process having already set the attachments in motion. On August 17, 1981, WESA attempted to cancel the EDCO contract of affreightment but HSC–TCI rejected the cancellation.

After hearings on August 14, 17, 18 and 19, 1981, motions by HSC–TCI to vacate Furness Withy's attachments were denied by Judge Virgil Pittman of the Southern District of Alabama. Judge Pittman also directed Furness Withy to post countersecurity in the amount of $800,000.00 to

abide by and answer the decree of the court in any final judgment, including appellate process, if any, rendered in favor of Hemmert Shipping Corporation ... on Hemmert's counterclaim, and any final judgment, including appellate process, if any, entered in favor of intervening plaintiffs Texas Chartering, Inc. and Hemmert International Corporation.... *In the event Hemmert Shipping Corporation, Hemmert International Corporation, and Texas Chartering, Inc. do not prevail in their counter-claims, the aforesaid cash deposit will be released or the aforesaid bond cancelled as the case may be.*

*See* Order of August 18, 1981 at 2. (Emphasis added).

On August 21, 1981, the parties reached a stipulation whereby Furness Withy agreed to release the attachments in exchange for adequate security to cover its claims against WESA. As the security,

HSC–TCI assigned $600,000.00 from the proceeds of the letter of credit. Furness Withy's $800,000.00 bond was retained by the court. All of the parties reserved their rights to arbitrate and litigate their respective causes of action.

Once the attachments were dissolved, HSC–TCI proceeded to fulfill its contract with WESA and the coal was transported on the EDCO and the letter of credit was negotiated at the bank in Atlanta. Subsequently, Furness Withy prevailed against WESA in arbitration and, pursuant to the parties' August 21, 1981 stipulation, received the $600,000.00 that HSC–TCI posted earlier as security.

After a bench trial, the district court made extensive findings of fact and concluded that (1) HSC–TCI was entitled to a judgment against WESA in the amount of $606,621.53, plus interest and attorney's fees;[4] (2) HSC–TCI was not liable to Furness Withy for tortious interference with contractual relations; and (3) HSC–TCI could not recover on its counterclaim against Furness Withy for wrongful attachment in the absence of bad faith or malice. Notwithstanding these findings, the court then awarded HSC–TCI the sum of $603,732.26, plus interest, for the wrongful attachment of the letter of credit and the coal, for the purpose of restoring HSC–TCI to the "same position they would have been in had the writs been dissolved immediately after they were entered."

Based on these findings, the following issues are presented on this appeal:

(1) Whether the district court applied an improper legal standard in deciding that HSC–TCI did not wrongfully interfere with Furness Withy's contractual relations;

(2) Whether the district court was clearly erroneous in finding that HSC–TCI's conduct did not constitute tortious interference with the contract;

by the district court and has not been argued on appeal.

4. WESA does not appeal from the district court judgment.

(3) Whether the district court erroneously found that Furness Withy unlawfully attached HSC–TCI's property;

(4) Whether the district court's finding that Furness Withy did not attach HSC–TCI's property in bad faith was clearly erroneous;

(5) Whether the district court correctly awarded damages to HSC–TCI in the absence of a favorable ruling on any of its counterclaims;

(6) Whether the district court properly computed HSC–TCI's damages;

(7) Whether the district court erred in failing to consider the merits of HSC–TCI's counterclaim for conversion.

## I. Tortious Interference with Contractual Relations

■ The district court held that HSC–TCI was not liable for tortious interference with the contract between Furness Withy and WESA primarily because it did not "induce" or "force" its breach. The court reached this conclusion by applying the standards set forth in § 766, Restatement (Second) of Torts (1977).[5] The court found that HSC–TCI simply engaged in "business in the usual manner" and did not intentionally "cause the results which are complained of." *See* Order of October 26, 1984 at 24–25. The court concluded that there was "a complete failure of proof as to this theory of recovery against" HSC–TCI. *Id.* at 25.

Furness Withy's main argument is that the district court erroneously required Furness Withy to prove that HSC–TCI's "primary purpose" was to unlawfully interfere with the contract at issue before liability could attach. It claims that HSC–TCI knew that it was interfering with Furness Withy's contract with WESA and that such knowledge is sufficient to show the intent

necessary for this particular tort. Furness Withy further urges that the district court incorrectly held that HSC–TCI did not "induce" WESA to breach its contract with Furness Withy.

■ Contrary to these assertions, the district court did not rule that an improper motive is a mandatory element of liability for the tort of interference with contractual relations. *Id.* The court simply stated that the absence of malice as a motivating factor was relevant in making a determination of whether HSC–TCI's interference with the contract was tortious.[6] The district court did not err in reaching this conclusion. *See* § 766 Restatement (Second) of Torts, Comments r and s (1977).

■ As noted earlier, the district court found that HSC–TCI did not induce WESA to breach its contract with Furness Withy. In light of the fact that there was uncertainty as to whether Furness Withy would meet the cancellation date as provided in its COA, we conclude that this finding is not clearly erroneous. Because of the absence of any such inducement and the lack of any wrongful motive on the part of HSC–TCI, the district court's determination that there was no proof of tortious interference is affirmed.

## II. The Damages Award

The district court awarded to HSC–TCI over $600,000.00 in damages plus interest. It reached this result despite its prior conclusion that HSC–TCI was *not* entitled to any damages on its counterclaims for wrongful attachment. The issue before us is whether this award can be sustained in view of the court's failure to rule in favor of HSC–TCI on any of its counterclaims.

---

**5.** This section states:

One who intentionally and improperly interferes with the performance of a contract ... by inducing or otherwise causing the third person not to perform the contract, is subject to liability....

The district court properly looked to the Restatement for guidance in resolving the issues

raised by this maritime case. *See generally Pino v. Protection Maritime Ins. Co., Ltd.,* 599 F.2d 10, 14 (1st Cir.) (1979).

**6.** In fact, the district court expressly stated that a defendant can be liable, if he is "substantially certain" that harm will be "produced by his conduct." *See* Order of October 26 at 23.

Furness Withy attached the coal and letter of credit pursuant to Fed.R.Civ.P.Supp. B(1).[7] The district court found that the attachment of the coal was ineffective because HSC–TCI, not WESA, owned the coal and the attachment of the letter of credit was invalid because HSC–TCI's rights in that letter were superior to those of WESA. Furness Withy maintains that the attachment of the coal was lawful because the transaction between WESA and HSC–TCI was no more than a pledge of the goods which left WESA with an interest in the coal subject to attachment.[8] We need not reach this issue, however, because the district court found that HSC–TCI was not entitled to any damages as a result of these allegedly wrongful attachments because there was no demonstrable bad faith or malice by Furness Withy. *See Frontera Fruit Co. v. Dowling,* 91 F.2d 293 (5th Cir.1937); *Ships & Freights, Inc. v. Farr, Whitlock & Co.,* 188 F.Supp. 438, 439 (E.D. N.Y.1960) (plaintiff must prove bad faith in order to prevail on claims of wrongful attachment in admiralty cases). In light of this conclusion, the attachments of the coal and letter of credit cannot serve as a basis for the award of damages to HSC–TCI.

 Acknowledging that it did not file a cross-appeal, HSC–TCI nevertheless contends that the district court's finding that Furness Withy did not act in bad faith was clearly erroneous. We proceed to consider this argument because a prevailing party may defend a judgment on any ground which the law and the record permit as long as it does not expand the relief granted by the court. *United States v. New York Telephone Co.,* 434 U.S. 159, 166 fn. 8, 98 S.Ct. 364, 369 fn. 8, 54 L.Ed.2d 376, 385 fn. 8 (1977). The district court's finding, however, that Furness Withy did not act in bad faith because it reasonably believed that WESA owned the coal and the letter of credit is supported by the evidence and is not clearly erroneous.[9] Therefore, the district court properly concluded that HSC–TCI was not entitled to any damages due to the purportedly wrongful attachments.

After holding that HSC–TCI could not recover under its theory of wrongful attachment, the district court proceeded to distribute the funds that Furness Withy had deposited into the court. The court found that the $800,000.00 bond "represented" the attached property. The court then stated that because the coal and the letter of credit were no longer before the court, HSC–TCI was entitled to the value of that property plus all reasonable expenses incurred as a result of the issuance of the writs of attachment. Order of October 26, 1984 at 38. HSC–TCI was accordingly awarded the amount it advanced for the coal and letter of credit plus expectant profits, demurrage paid on the EDCO which resulted from the delay in shipping the coal and interest.[10]

 Furness Withy challenges this award of damages because HSC–TCI did not prevail on any of its counterclaims. This argument is meritorious. As pointed out earlier, the order which required Furness Withy to post the $800,000.00 provided

7. This Rule states in pertinent part:
 (1) When Available: Complaint, Affidavit, and Process. With respect to any admiralty or maritime claim *in personam* a verified complaint may contain a prayer ... to attach the defendant's goods and chattels or credits and effects in the hands of garnishees...., if the defendant shall not be found within the district. Such a complaint shall be accompanied by an affidavit signed by the plaintiff or his attorney, that, to the affiant's knowledge ... the defendant cannot be found within the district....

8. Furness Withy does not urge that the letter of credit was validly attached.

9. HSC–TCI claims that Furness Withy acted in bad faith because it told Furness Withy that WESA did not own the coal or letter of credit prior to service of the attachments. This argument fails, however, because Furness Withy asked HSC–TCI for further documentation to support this contention and never received a reply.

10. The court also subtracted $88,998.60 from the total figure because of sums that had been previously recovered by HSC–TCI.

that the bond would be released if HSC–TCI "do not prevail in their counterclaims." *See* Order of August 18, 1981 at 2. Since the district court found in favor of Furness Withy on HSC–TCI's counterclaim for wrongful attachment, the court had no authority under the terms of the order to distribute the proceeds of that bond to HSC–TCI.

HSC–TCI attempts to sustain its favorable damages judgment on the theory that the district court has broad equitable powers to insure that the proceeds of a bond are distributed so as to do "substantial justice." Assuming the existence of these "powers" in an appropriate case, we nonetheless find on the present facts that the terms of the order must control the distribution of the proceeds from the bond. Furthermore, the bond was posted pursuant to Rule E(7) of the Admiralty Rules which provides:

> *Security on Counterclaim.* Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, *any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim* unless the court, for cause shown, shall otherwise direct.... (emphasis added).

This rule contemplates, as did the court's order, that the defendant is entitled to the proceeds of the bond only if it prevails on its counterclaim.[11] The district court erred

in holding that Furness Withy posted the bond as a substitute for the coal and letter of credit and incorrectly entered judgment in favor of HSC–TCI on the bond.

HSC–TCI also argues that the damage award can be affirmed because it is entitled to be reimbursed by Furness Withy for the $600,000.00 that it posted to secure Furness Withy's claims against WESA. The problem with this position is that HSC–TCI *agreed* to post that bond in exchange for Furness Withy's agreement to release the attachments. It would be inequitable to now require the return of the $600,000.00 which was the basis for an agreement voluntarily entered into by HSC–TCI to assume WESA's liability for the breach of its original contract of affreightment. Furthermore, an official of HSC–TCI admitted before Judge Pittman that HSC–TCI knew when it contracted with Dr. Liu that it was assuming the risk that Furness Withy was going to meet the cancellation date. *See* Defendant's Exhibit 26 at 32. It is now too late to complain about the results of a voluntarily assumed risk.

For all of the foregoing reasons, we vacate the district court's award of damages to HSC–TCI.[12] Since the district court did not reach the merits of HSC–TCI's counterclaim against Furness Withy for conversion of the coal,[13] it is necessary to remand the case for a determination of that cause of action. *See generally, Baker v. Bell,* 630 F.2d 1046, 1055 (11th Cir.1980). We express no opinion as to the validity of that counterclaim or the appropriate amount of damages should the court find in favor of HSC–TCI.

---

**11.** HSC–TCI points to statements made by Judge Pittman during the hearing on August 17, 1981 to support its argument that the bond was posted as a substitute for the coal. The order requiring the bond, however unambiguously, states that the proceeds thereof will be returned to Furness Withy if HSC–TCI fails in its counterclaims. HSC–TCI has cited no case law to support its theory that an unambiguous order should be interpreted differently because of statements made by the judge prior to the issuance of the written order.

**12.** Because of this holding, we need not decide whether the district court correctly calculated HSC–TCI's damages. We note, however, that the district court's decision to award HSC–TCI the value of the coal is puzzling in light of the fact that the coal was released to HSC–TCI and later sold to the Taiwan purchaser.

**13.** Although HSC–TCI's brief is vague on this point, it claimed at oral argument that the district court never decided the conversion counterclaim. Our review of the district court's final order leads us to the same conclusion.

AFFIRMED in part, REVERSED in part and REMANDED for proceedings consistent with this opinion.