**AFRAM LINES INTERNATIONAL, INC., Plaintiff–Appellant,**

v.

**The M/V CAPETAN YIANNIS, engines, tackle, apparel, etc., in rem, Brotherhood Shipping Co., Ltd., in personam, Defendants–Appellees.**

**No. 89–3100.**

United States Court of Appeals, Eleventh Circuit.

June 19, 1990.

---

* Senior Judge James C. Hill has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. § 46(c).

**348**

Allen Von Spiegelfeld, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, Fla., for plaintiff-appellant.

Paul D. Hardy, Tampa, Fla., for defendants-appellants.

Before KRAVITCH, Circuit Judge, RONEY *, Senior Circuit Judge, and ATKINS **, Senior District Judge.

ATKINS, Senior District Judge:

This is an appeal from a district court order requiring the appellant, Afram Lines International, Inc. ("Afram"), to post countersecurity pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Rule E(7)"). The order required Afram to post countersecurity in the amount of $4,724,475.74. For the reasons set forth below, we hold that the district court abused its discretion in requiring Afram to post this sum. We therefore *VACATE* the district court's order and *REMAND* the case for further proceedings consistent with this opinion.

A.

*Facts and Background Information.*

The appellee Brotherhood Shipping Company, LTD. ("Brotherhood") is a Greek shipping organization. Brotherhood owns the M/V Capetan Yannis ("the vessel"). The appellant Afram is a Florida corporation based in Tampa. In December, 1987, Brotherhood, Afram, and non-party Grant Shipping Company reached an agreement by which the vessel was subchartered to Afram. Pursuant to the agreement, Afram was to transport certain materials from Milwaukee, Wisconsin to West Africa. The parties further agreed that the vessel was to be commanded by a Brotherhood employee.

On December 12, 1987, the parties took the vessel to the Port of Milwaukee and began to load the cargo. Before the voyage could begin, however, a storm threatened the Milwaukee area. On December 14, 1987, the harbormaster issued to all affected vessels a notice of the impending storm. After allegedly receiving ambiguous advice from Afram's Milwaukee representatives, the vessel's master decided to keep the vessel tied to the dock. The storm hit the next day. Its force split the vessel's mooring lines and pushed the vessel repeatedly against the dock. Both the vessel and the dock sustained substantial structural damage in these collisions.

Afram promptly filed an action in the Eastern District of Wisconsin. The action sought recovery *in rem* from the vessel, and *in personam* from Brotherhood. Afram claimed approximately $1.7 million in damages flowing from Brotherhood's alleged negligence, conversion, and breach of the subcharter agreement.[1] Afram also demanded security on its claim and was, evidently, prepared to arrest the vessel. To avoid the necessity of arrest, Afram and Brotherhood agreed that the latter would post a $440,000.00 bank guarantee. Brotherhood did so. Afram then instituted the present action in the Middle District of Florida in Tampa.[2] Brotherhood filed an

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. According to Afram's president, the actual value of Afram's claim was more in the range of $800,000.00. Counsel for Afram does not appear to contest this finding.

2. It is not clear whether Afram dismissed the Wisconsin action and refiled the case in Florida, or whether the Wisconsin court transferred the case pursuant to 28 U.S.C. § 1404(a).

answer and a counterclaim. Brotherhood claimed that it had sustained damages in the amount of $4,724,475.74 and that these damages were, for a host of reasons, attributable to Afram's own conduct.

Subsequent maneuverings gave rise to the present appeal. After filing its answer and counterclaim, Brotherhood filed a motion pursuant to Rule E(7) to compel Afram to post countersecurity. The district court granted the motion and ordered Afram to post countersecurity to cover the full, stated value of Brotherhood's claim. Afram filed a motion for reconsideration; it contended that it could not post such a large bond and that it would, consequently, be forced to abandon its action against Brotherhood. By order dated January 9, 1989, the district court denied Afram's motion. This appeal followed.[3]

### B.

*Discussion.*

The issue on appeal is whether the district court erred when it ordered Afram to post $4,724,475.74 in countersecurity. To resolve this issue, we turn first to Rule E(7):

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to the action which was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in the counterclaim, unless the court, *for cause shown,* shall otherwise direct.

(emphasis added). Like that of its predecessors,[4] Rule E(7)'s purpose is to "place the parties on an equality as regards secur-

ity." *Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 638–39, 44 S.Ct. 220, 223, 68 L.Ed. 480 (1924) (citations omitted) (construing former Admiralty Rule 53); *accord The City of Beaumont,* 8 F.2d 599, 601 (4th Cir.1925) (construing former Admiralty Rule 50). To effectuate this purpose, the district court retains broad discretion to determine whether (and in what amount) countersecurity shall be posted. *See Titan,* 808 F.2d at 403 (Rule's "for cause shown" determination relegated to sound discretion of district court); *Spriggs v. Hoffshot,* 240 F.2d 76, 80 (4th Cir.1957) (former Admiralty Rule 50 "allows the [court] discretion whether or not to require bond from the cross-respondent....").

Although countersecurity determinations are vouchsafed to the district court's discretion, the court's inquiry must be guided by several considerations. First, the court should be reluctant to order countersecurity if the plaintiff does not, by the posting of countersecurity, seek to release its property from the counterplaintiff's custody. *See Expert Diesel, Inc. v. The Yacht "Fishin' Fool",* 627 F.Supp. 432, 433 (S.D. Fla.1986), *cited with approval in Goudy & Stephens, Inc. v. Cable Marine, Inc.,* 665 F.Supp. 67, 71 (D.Me.1987); *see also* 7A J. Moore, *Moore's Federal Practice* E–738 (2d ed. 1983) ("Compelling the posting of *any* security by a party who has no property whose release he is attempting to secure is contrary to our judicial system.") (emphasis original). Second, the court should determine whether the counterplaintiff could initially have brought its claim *in rem* or *quasi in rem.* Where the counterplaintiff could not have proceeded in this manner, "there seems little justification for ever requiring a larger bond on the counterclaim than is required in the original action." Moore, *supra* at E–738, *cited with approval in Goudy & Stephens,* 665 F.Supp. at

---

**3.** This court has jurisdiction to entertain the present appeal. *See Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 402 (5th Cir.1987) (citing *Incas and Monterey Printing and Packaging, Ltd. v. M/V Sang Jin,* 747 F.2d 958 (5th Cir.1984) (appellate court has jurisdiction to entertain appeal from countersecurity order).

**4.** Former Admiralty Rule 50 preceded Rule E(7) and provided for "security on cross libels" upon "... any counterclaim arising out of the same contract or cause of action for which the original libel was filed...." Former Admiralty Rule 53 preceded Rule 50 and was to the same general effect.

72–73. Additionally, the court should consider, if applicable, the plaintiff's financial ability to post countersecurity, *see Titan,* 808 F.2d at 403 (citing *Beaumont,* 8 F.2d at 601), and the extent to which the counterclaim may be deemed frivolous. *See Titan,* 808 F.2d at 404; *see also* Moore, *supra* at E–756 n. 95 (listing other factors germane to countersecurity determination).

Turning now to the facts of the present case, this court concludes that the district court abused its discretion when it ordered Afram to post full countersecurity. First, Afram did not seek, by the posting of countersecurity, to release any of its property from Brotherhood's custody. Second, Brotherhood could not itself have commenced this action either *in rem* or *quasi in rem*—its action sought recovery from Afram *in personam.* We believe that where these two factors are present, district courts should not, absent extraordinary circumstances, require claimants like Afram to post countersecurity in an amount which exceeds the security posted on the original claim. *See supra* at 349–50 (collecting case law and commentary). Thus, although Brotherhood's counterclaim cannot be deemed frivolous, and although Afram could arguably have mustered some form of countersecurity,[5] we nevertheless conclude, in light of the first two factors, that Afram need not post countersecurity in excess of the amount posted by Brotherhood. *See generally* Moore, *supra* at E–729 (warning that as a result of Rule E(7)'s countersecurity provision, "the already burdensome costs of commencing an in rem or quasi in rem proceeding may be escalated beyond the reach of some plaintiffs.") (citations omitted). Accordingly, the district court's order must be vacated.

### C.

### *Conclusion.*

In sum, we hold that the district court abused it discretion when, on the facts of

this case, it ordered Afram to post countersecurity in the sum of $4,724,475.74. We therefore *VACATE* that order and *REMAND* this case to the district court for further proceedings consistent with this opinion.

---

5. Because Brotherhood "agreed" to accept a letter of undertaking from Afram's insurance carriers, the district court found that Afram was financially able to post countersecurity. *See Salazar v. Atlantic Sun,* 881 F.2d 73, 77 (3d Cir.1989) (letter of undertaking is "an agreement that the owner will enter an appearance, acknowledge ownership, and, whether the vessel be lost or not, pay any final decrees entered against the ship").