**RESULT SHIPPING CO., LTD.,**
**Plaintiff–Appellee,**

v.

**FERRUZZI TRADING USA INC.,**
**Defendant–Appellant.**

**No. 1474, Docket 94–7955.**

United States Court of Appeals,
Second Circuit.

Argued April 6, 1995.

Decided May 25, 1995.

David A. Botwinik, New York City (Steven Skulnik, Debra J. Guzov, Pavia & Harcourt, on the brief), for defendant-appellant.

Peter Skoufalos, Skoufalos & Proios, New York City, for plaintiff-appellee.

Before: NEWMAN, Chief Judge, WINTER and MAHONEY, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns the scope of the District Court's discretion in deciding whether to grant security and/or countersecurity to a defendant-counterclaimant in an admiralty proceeding brought in aid of arbitration. The issue arises on an appeal by defendant Ferruzzi Trading USA Inc. ("Ferruzzi") from an order entered on August 24, 1994, by the United States District Court for the District of Connecticut (Alan H. Nevas, Judge). Plaintiff Result Shipping Co. ("Result") commenced the action by attaching Ferruzzi's property to secure an *in personam* admiralty claim against Ferruzzi. In its August 24 order, the District Court denied Ferruzzi's motion for security for costs related to the attachment and for countersecurity on its counterclaims against Result, and granted Result's motion to stay the proceedings pending arbitration of the dispute between the parties.

On appeal, Ferruzzi contends that the District Court denied its motion for security and countersecurity solely because the underlying dispute was to be resolved in arbitration, and that denying the motion on this basis represented a reversible failure to exercise the Court's discretion. Ferruzzi also contends that the District Court's denial of security to cover its costs related to the attachment fails to comport with the requirements of due process. With respect to the denial of security for costs, we reject Ferruzzi's arguments and affirm that part of the District Court's order. We find more merit, however, in Ferruzzi's argument that the District Court denied its motion for countersecurity solely because the underlying dispute was subject to arbitration. Because we hold that the arbitrability of a dispute is not relevant to a decision whether to grant countersecurity to a defendant under these circumstances, we vacate and remand this part of the District Court's order.

## Background

This dispute arose out of a shipment of grain from the United States to Jordan pursuant to a contract between Ferruzzi and the Jordanian Ministry of Supply. In order to ship the grain, Ferruzzi chartered the M/V *Bulk Topaz* from Result. The charter party between Ferruzzi and Result provided that all disputes arising out of the charter would be subject to arbitration in London.

When the grain was loaded onto the *Bulk Topaz* in Baltimore, it was certified by the U.S. Grain Inspection Service as being of the grade and quality called for in the contract between Ferruzzi and the Jordanian Ministry. When the vessel arrived in Jordan, however, the Ministry rejected the grain in two of the vessel's holds as damaged. The Ministry therefore took two steps that were costly to both Result and Ferruzzi: it seized the *Bulk Topaz,* temporarily depriving Result of the use of its ship and forcing it to post a bond to obtain the release of the vessel, and it required payment under a performance bond posted by Ferruzzi.

Result subsequently commenced this action in the District Court with a complaint alleging that Ferruzzi had loaded damaged grain onto the *Bulk Topaz* and otherwise failed to perform under the charter party with respect to the handling of the damaged grain in Jordan, and claiming total damages of $1,082,139.30. Pursuant to Rule B(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"), Result sought to secure these *in personam* claims by attaching Ferruzzi's property in the District of Connecticut, consisting primarily of a $66,000 mortgage on residential property owned by two Ferruzzi employees. The District Court authorized the attachment, which Ferruzzi has never attempted to vacate in a post-attachment hearing, as provided for by Supplemental Rule E(4)(f).

In its answer, Ferruzzi asserted a counter-claim alleging that Result's crew was responsible for damaging the grain after it had been loaded onto the *Bulk Topaz,* and that Result was therefore liable to Ferruzzi for damages totalling $375,000. Ferruzzi also contended that by initiating the litigation in the District Court, Result had acted in a manner inconsistent with arbitration and had thereby waived its right to arbitration. Finally, Ferruzzi moved for security for all costs and expenses that might be ordered against Result in the trial court or on appeal, and for countersecurity on its counterclaim. Result thereafter moved, pursuant to section 8 of the Arbitration Act, 9 U.S.C. § 8 (1988), for the litigation to be stayed pending arbitration of the merits in London.

On August 24, 1994, Judge Nevas granted, "for the reasons stated on the record at the hearing held this date," Result's motion to stay the proceedings pending arbitration in London, and denied Ferruzzi's motion for security and countersecurity. Ferruzzi appeals from the order denying its motion.

### Discussion

#### I. Appellate Jurisdiction

■ Initially, we must consider the matter of our jurisdiction, which arises because this appeal is not from a final judgment concluding the proceedings in the District Court. *See* 28 U.S.C. § 1291 (1988). Ferruzzi contends that we have jurisdiction to hear the appeal under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 545–47, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). To be appealable under the *Cohen* doctrine,

> an order must at a minimum satisfy three conditions: It must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effec-

tively unreviewable on appeal from a final judgment.

*Banque Nordeurope S.A. v. Banker,* 970 F.2d 1129, 1131 (2d Cir.1992) (internal quotation marks omitted); *see also Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 431, 105 S.Ct. 2757, 2761, 86 L.Ed.2d 340 (1985). *Cohen* itself concerned an appeal from an order denying security, *see* 337 U.S. at 545, 69 S.Ct. at 1225, as it illustrates, such orders are paradigms of final collateral orders that are unreviewable on appeal from a final judgment.

■ Result argues, however, that an order denying security may be appealed under the *Cohen* doctrine only when the trial judge mistakenly believed that he lacked the power to grant the requested relief, but not when the judge recognized his discretion to grant the relief but denied it in an exercise of that discretion. Since it is not claimed in this case that Judge Nevas thought he lacked the power to grant Ferruzzi's motion for security and countersecurity, Result contends that the attempted appeal must be dismissed. This argument construes the scope of the *Cohen* doctrine too narrowly. It is true that we have dismissed appeals for lack of jurisdiction when they raise only a fact-specific challenge to the trial court's exercise of its discretion in granting, denying, or setting the amount of security. *See Donlon Industries, Inc. v. Forte,* 402 F.2d 935, 937 (2d Cir.1968); *Bancroft Navigation Co. v. Chadade Steamship Co.,* 349 F.2d 527, 530 (2d Cir.1965); *see also Cohen,* 337 U.S. at 547, 69 S.Ct. at 1226. However, even if the trial court does not completely misapprehend the existence of its discretion in the matter, orders denying security may be appealable, particularly when "the appeal presents an important question of law whose resolution will guide courts in other cases." *Banque Nordeurope,* 970 F.2d at 1131.[1]

---

1. We note that our cases are not entirely consistent on the issue of whether orders *granting* security may be appealed under the *Cohen* doctrine. *Compare Banque Nordeurope,* 970 F.2d at 1130–31 (orders granting or denying security are immediately appealable if they present important issues of law), *with Caribbean Trading & Fidelity Corp. v. Nigerian National Petroleum Corp.,* 948 F.2d 111, 114 (2d Cir.1991) (orders denying se-

curity are immediately appealable, but orders granting security are not), *cert. denied,* 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992). We need not reconcile these precedents because Ferruzzi appeals from an order denying security and its appeal raises important issues of law. Thus, its appeal satisfies the tests of both cases just cited.

■ The instant appeal presents issues concerning the interplay of the Arbitration Act, on the one hand, and the Supplemental Rules governing the availability of security and countersecurity, on the other. Because our Circuit has not previously had occasion to consider this relatively unexplored region of the law, the resolution of these issues will provide necessary guidance to trial courts in this potentially recurring context. Since the other requirements of the *Cohen* doctrine are clearly satisfied, we will decide the appeal on the merits.

## II. The Merits

This case is governed by section 8 of the Arbitration Act, 9 U.S.C. § 8 (1988), which provides that when the basis for jurisdiction is a cause of action in admiralty,

> the party claiming to be aggrieved may begin his proceeding hereunder by libel and seizure of the vessel or other property of the other party according to the usual course of admiralty proceedings, and the court shall then have jurisdiction to direct the parties to proceed with the arbitration and shall retain jurisdiction to enter its decree upon the award.

The purpose of this statute "is to relieve a party from making an election between the libel-cum-seizure remedy, on the one hand, and the order-to-arbitrate remedy, on the other hand...." *Greenwich Marine, Inc. v. S.S. Alexandra,* 339 F.2d 901, 904 (2d Cir. 1965); *see also The Anaconda v. American Sugar Refining Co.,* 322 U.S. 42, 46, 64 S.Ct. 863, 865, 88 L.Ed. 1117 (1944). The statute plainly allows a *plaintiff* such as Result to invoke the admiralty jurisdiction of federal courts to attach the defendant's property "according to the usual course of admiralty proceedings," such as the procedure authorized by Supplemental Rule B, and at the same time to have the merits of the dispute resolved in arbitration.[2]

The issue in this case is whether, notwithstanding the arbitration of the underlying dispute, a *defendant* such as Ferruzzi also has a right to security "according to the usual course of admiralty proceedings." Ferruzzi attempted to avail itself of two forms of security allowed defendants by the Supplemental Rules: security on its counterclaims (or "countersecurity"), *see* Supplemental Rule E(7), and security for costs, *see* Supplemental Rule E(2)(b). We consider each in turn.

### A. Rule E(7): Countersecurity

■ Supplemental Rule E(7) provides in relevant part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or [counter-]claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct....

Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions. *See Afram Lines International, Inc. v. M/V Capetan Yiannis,* 905 F.2d 347, 349 (11th Cir. 1990); *Titan Navigation, Inc. v. Timsco, Inc.,* 808 F.2d 400, 403 (5th Cir.1987); 7A James W. Moore et al., *Moore's Federal Practice* ¶ E.15, at E–756 (2d ed. 1995).

In exercising this discretion, the court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is "'to place the parties on an equality as regards security,'" *Titan Navigation,* 808 F.2d at 403 (quoting *Washington–Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.,* 263 U.S. 629, 638–39, 44 S.Ct. 220, 223, 68 L.Ed. 480 (1924)), which usually

---

**2.** Although Ferruzzi argued in the District Court that Result waived arbitration by commencing this suit with a complaint that neither referred to the arbitration clause nor requested arbitration, it has abandoned this argument on appeal and does not challenge the order staying the litigation pending arbitration.

favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an independent suit. On the other hand, the Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. *See Titan Navigation,* 808 F.2d at 403–05; *see also Washington–Southern,* 263 U.S. at 632–36, 44 S.Ct. at 221–22 (construing predecessor to Rule E(7) under old Admiralty Rules). In balancing these policies, the trial court

> is to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection.

*Titan Navigation,* 808 F.2d at 404; *see also id.* at 403–05 (listing typical cases in which countersecurity should not be granted); *Afram Lines,* 905 F.2d at 349–50 (same).[3]

■ The trial court has a similarly broad discretion with respect to ordering countersecurity in proceedings brought pursuant to section 8 of the Arbitration Act. The Fifth Circuit has persuasively reasoned that countersecurity may be ordered in section 8 cases:

> Nothing in the language of section 8 limits its application to plaintiffs. As one advancing a counterclaim otherwise justiciable in admiralty, [the counterclaimant] is a party "claiming to be aggrieved" within the meaning of section 8. As such, it may request countersecurity under Rule E(7), a traditional procedure in admiralty.

*Transportes Caribe, S.A. v. M/V Feder Trader,* 860 F.2d 637, 638 (5th Cir.1988). Consistent with this reasoning, countersecurity has been granted to defendants advancing tradi-

tional admiralty counterclaims in other section 8 cases. *See, e.g., Starboard Venture Shipping, Inc. v. Casinomar Transportation, Inc.,* No. 93–CIV–644, 1993 WL 464686, at *5–7 (S.D.N.Y. Nov. 9, 1993); *E.A.S.T., Inc. of Stamford v. M/V Alaia,* 673 F.Supp. 796, 804 (E.D.La.1987), *aff'd,* 876 F.2d 1168 (5th Cir.1989). *But cf. Wijsmuller BV v. Tug Benasque,* 528 F.Supp. 1081, 1084 (D.Del. 1981) (denying countersecurity without prejudice when transferring case to foreign court under forum selection clause, to which section 8 does not apply).

■ Of course, a district court also may exercise its discretion to *deny* countersecurity in an action under section 8. *See, e.g., A/S P.V. Christensen v. Bando Lumber Co.,* No. 85–CIV–1594, 1985 WL 2052 (S.D.N.Y. July 25, 1985). However, denying countersecurity *because* the underlying dispute is being resolved in arbitration would conflict with the clear purposes of both section 8 and Rule E(7). Section 8 allows an "aggrieved party" to enjoy the advantages of *both* arbitration *and* traditional maritime security devices, and a counterclaiming defendant is an "aggrieved party" within the meaning of the statute who is as entitled to both these remedies as is the plaintiff. Moreover, the purpose of Rule E(7) is to equalize, where not otherwise inequitable, the positions of the plaintiff and defendant with respect to security. A plaintiff clearly may not be denied an order of attachment or arrest merely because the parties' dispute is to be resolved in arbitration. Similarly, such arbitration is not a permissible basis on which to deny the defendant the benefit of traditional maritime security devices, such as countersecurity under Rule E(7).

■ In the instant case, the transcript of the August 24 hearing in the District Court leaves us uncertain as to the reasons why the Court denied Ferruzzi's motion for countersecurity. Some statements by Judge Nevas indicate that he did not deny Ferruz-

---

**3.** We do not agree with the Eleventh Circuit in *Afram Lines,* 905 F.2d at 349, if it meant to suggest that countersecurity is inappropriate unless the plaintiff is seeking to have released property the defendant has previously attached. Countersecurity may be ordered when the plain-

tiff has compelled the defendant to give security to satisfy the plaintiff's claim, *see Washington–Southern,* 263 U.S. at 639, 44 S.Ct. at 223; it is not necessary that the defendant have previously taken possession of the plaintiff's property to satisfy the defendant's counterclaim.

zi's motion in an exercise of his discretion, but rather declined to exercise that discretion because the underlying dispute was to be resolved in London arbitration, where, he presumed, Ferruzzi could seek the requested security for its counterclaims. However, the transcript also leaves open the possibility that the Judge exercised his discretion and considered all relevant circumstances in denying the countersecurity, and that he referred to the London arbitration only to indicate that his decision was without prejudice to Ferruzzi's renewing its request in the latter forum. If that were the case, we would not disturb the District Judge's discretionary decision in the absence of clear abuse. *See* 7A Moore et al., *supra,* ¶ E.15, at E–756. However, because the existing case law would not have made it clear that the arbitrability of the dispute was not a permissible basis for denying countersecurity, and because the record does not provide any obvious indication of an alternative basis for the denial in this case, we believe that the best course is to remand on this issue in order to allow the District Judge to exercise his discretion without reference to the impermissible consideration of arbitration.

**B. Rule E(2)(b): Security for Costs**

■■■ Ferruzzi also moved for security for its costs in connection with the plaintiff's attachment of its property. Pursuant to Supplemental Rule E(2)(b), the trial court has broad discretion to order a party to post security for costs. *See also* D.Conn.R.Civ.P. 8(a). Such costs may include the premium for bonds obtained to release an attachment. *See* 6 Moore et al., *supra,* ¶ 54.77[8], at 54–477; D.Conn.R.Civ.P. 17(c)(6)(ii); *cf. Schiffahartsgesellschaft Leonhardt & Co. v. A. Bottacchi S.A. de Navegacion,* 773 F.2d 1528, 1537 (11th Cir.1985) (en banc). In an action under section 8 of the Arbitration Act, the District Court retains jurisdiction to rule on procedural matters, such as the posting of security under Rule E(2)(b), even after the litigation has been stayed on the merits. *See Transportes Caribe,* 860 F.2d at 639. Thus,

the fact that the underlying dispute is to be arbitrated does not relieve the District Court of its obligation to exercise its discretion in deciding whether to order a plaintiff to post security for costs under Rule E(2)(b).

■■■ In the instant case, Judge Nevas denied Ferruzzi's request for such security on the ground that Ferruzzi could obtain the release of its attached property without incurring the expense of posting a substitute bond. Because Result had agreed to stipulate to the release if Ferruzzi posted $66,000 in an interest-bearing escrow account that would be available to satisfy an arbitration award, *cf.* Supplemental Rule E(5)(c), the Judge reasoned that in the event Ferruzzi prevailed on the merits, the accrued interest from the escrow account would compensate it for the expense incurred in releasing the attachment, namely the loss of the use of the $66,000 to be deposited in the account. We see no reason to disturb this entirely reasonable ruling, especially in view of the trial judge's broad discretion in this matter.

■■■ In oral argument before this Court, counsel for Ferruzzi maintained that because its property had been attached, Ferruzzi was entitled to security for all costs incurred in defending against Result's claims, including attorney's fees. We find no authority supporting this assertion. It conflicts with the well-established "American Rule" applicable in the federal courts, under which the prevailing party may not recover attorney's fees from the loser, absent statutory or contractual provisions to the contrary. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 257–60, 95 S.Ct. 1612, 1621–23, 44 L.Ed.2d 141 (1975) (also listing limited number of narrow judicially created exceptions not at issue here); *Cruz v. Local Union No. 3 of the IBEW,* 34 F.3d 1148, 1158–59 (2d Cir.1994). Ferruzzi has pointed to no federal statute authorizing awards of attorney's fees to a prevailing defendant in a maritime case merely because the litigation was initiated by attachment.[4] Since these fees are not taxable as costs, the District

---

4. The only federal authority cited by Ferruzzi on this point is *International Ocean Way Corp. of Monrovia v. Hyde Park Navigation, Ltd.,* 555 F.Supp. 1047, 1049 (S.D.N.Y.1983), a maritime

action initiated under Supplemental Rule B in which the court ordered the plaintiff to post a bond "to secure defendant against any costs and damages, including reasonable attorneys fees,

Court could not have required Result to post security for such amounts under Rule E(2)(b).[5]

■ Finally, Ferruzzi argues that the attachment procedures of Rule B, as applied to it, violate the Due Process Clause of the Fifth Amendment because Result was not required to post a bond. In support of this position, Ferruzzi relies on the view expressed by four Justices in *Connecticut v. Doehr*, 501 U.S. 1, 18–23, 111 S.Ct. 2105, 2116–19, 115 L.Ed.2d 1 (1991) (opinion of White, J.), that due process requires a plaintiff to post a bond or other security when invoking prejudgment attachment procedures. However, because only a plurality of the Justices addressed this issue in *Doehr*, this Circuit has continued to adhere to our previously established position that a security bond need not be posted in connection with a prejudgment attachment in order to satisfy the requirements of due process. *See Shaumyan v. O'Neill*, 987 F.2d 122, 128–29 (2d Cir.1993); *Pinsky v. Duncan*, 898 F.2d 852, 860–61, 864 (2d Cir.) (Mahoney, J., concurring in the result, and Newman, J., dissenting), *amended on other grounds on reh'g*,

907 F.2d 17 (2d Cir.1990), *aff'd on other grounds sub nom. Connecticut v. Doehr*, *supra; see also Schiffahartsgesellschaft Leonhardt*, 773 F.2d at 1537–38.[6]

In sum, an attaching plaintiff may be required to post security under Supplemental Rule E(2)(b) only for a very limited range of costs in connection with the attachment, the District Court in this case acted within its discretion under the Rule in denying such security, and the constitutional guarantee of due process does not mandate a different result. We therefore affirm this aspect of the District Court's order.

### Conclusion

The order of the District Court is affirmed with respect to the denial of the motion for security for costs, and is vacated and remanded for further proceedings in accordance with this opinion with respect to the denial of the motion for countersecurity on the counterclaims.

---

which defendant may sustain by reason of the attachment if defendant recovers judgment." In support of this order, the court cited N.Y. C.P.L.R. § 6212(b) (McKinney 1980), which requires an attaching plaintiff to post an undertaking to pay the defendant all costs and damages, including reasonable attorney's fees, if it is ultimately determined that the plaintiff was "not entitled to" the attachment. However, state rules of practice with respect to attorney's fees are not applicable in federal court, with limited exceptions such as for diversity cases, *see Alyeska*, 421 U.S. at 259 n. 31, 95 S.Ct. at 1623 n. 31, or where federal law or rules of procedure incorporate state practice. An example of the latter exception is found in Supplemental Rule B(1) itself, which, in addition to the federal attachment procedure provided for by the Rule, also allows a plaintiff to invoke state-law attachment remedies. In this case, however, Result did not invoke Connecticut—much less New York—procedures for attaching Ferruzzi's property, and state practice with respect to prejudgment attachments has no place here.

5. A plaintiff in a maritime case may be liable in damages for the wrongful attachment of the defendant's property, but only on a showing of bad faith, malice, or gross negligence. *See* 2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 21–5, at 500 (2d ed. 1994); *see also Furness Withy (Chartering), Inc. v. World Energy Systems Associates, Inc.*, 772 F.2d 802, 808 (11th Cir.

1985). Ferruzzi has not alleged a claim for wrongful attachment in this sense. It is not clear, moreover, whether a claim of wrongful attachment may be asserted as a counterclaim in the same suit that was initiated by such attachment. *Compare Solomon v. Bruchhausen*, 305 F.2d 941 (2d Cir.1962) (claim for abuse of process may not be asserted as cross-libel under old Admiralty Rules), *cert. denied*, 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499 (1963), *with Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 965 & n. 19 (5th Cir.1984) (suggesting that *Solomon* rule against joinder of wrongful attachment counterclaim might no longer be valid under Supplemental Rules), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2361, 86 L.Ed.2d 261 (1985). In any event, countersecurity for a wrongful attachment counterclaim may not be required under Rule E(7), because the wrongful attachment would not have arisen out of the same transaction or occurrence with respect to which the action was originally filed. *See id.*, 747 F.2d at 965; *see also Solomon*, 305 F.2d at 943.

6. Ferruzzi has not raised a due process challenge to any other aspect of the prejudgment attachment procedures provided for by the Supplemental Rules, and we express no view as to the adequacy of those procedures.