**YTHAN LIMITED, Plaintiff,**

v.

**AMERICAS BULK TRANSPORT LIMITED, Defendant.**

**No. 04 Civ. 6655(PKC).**

United States District Court,
S.D. New York.

Sept. 16, 2004.

by the trademark holder.

Owen Francis Duffy, III, Fowler, Rodriguez & Chalos, Port Washington, NY, for plaintiff.

Gina Maria Venezia, Freehill, Hogan & Mahar, LLP, New York, NY. Terry L. Stoltz, Nicoletti Hornig Campise Sweeney & Paige, New York, NY, for defendant.

## MEMORANDUM AND ORDER

CASTEL, District Judge.

This is an application to vacate a maritime attachment. The underlying claim, pending in a London arbitration, arises from an explosion aboard the M.S. Ythan during a voyage to China resulting in the death of six crewmembers and the sinking of the vessel and its cargo. Familiarity is assumed with Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supp.Rules") and Judge Haight's

opinion for the Second Circuit in *Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir.2002), *cert. denied*, 539 U.S. 927, 123 S.Ct. 2578, 156 L.Ed.2d 605 (2003), which traces the history of the Rule from its centuries-old origins.

On August 17, 2004, upon the *ex parte* application of plaintiff Ythan Limited ("Ythan"), I signed an order directing the Clerk to issue Process of Maritime Attachment against all property, tangible and intangible, located in the district belonging to defendant Americas Bulk Transport Limited ("Americas Bulk") up to the amount of $20 million. Specifically included in the application and my order were electronic funds transfers ("EFTs") in the possession or control of Citibank N.A. ("Citibank"). The Clerk issued process and counsel for Ythan contacted counsel for Citibank to inquire whether Citibank would agree (1) to accept service via facsimile; and (2) "waive the requirement of continuous service for a brief period of time." Citibank's attorney, after considering the matter, agreed to accept service of process via facsimile provided it was transmitted to a specific phone number, and agreed to a modified version of Ythan's counsel's proposal on the continued efficacy of process. The bank's counsel "confirmed that, if the Process of Maritime Attachment was served in the morning of any particular day by telefax, Citibank N.A. would agree to treat that service as being effective throughout the remainder of that particular business day so as to avoid the 'absurdity' of having to continuously accept service of process throughout the day." Pursuant to that agreement, Process of Maritime Attachment was faxed to Citibank on August 20, 23, 24 and 25. On August 25, a representative of Citibank telephoned to advise that, pursuant to process, it was holding six electronic fund transfers totaling $525,838.99. Americas Bulk maintains that the process on which the attachment was premised was void because there was no *res* in the possession of Citibank at the moment it was served.

■ A Process of Maritime Attachment is void unless, at the time of service, there is a *res* capable of being attached; the fact that property subsequently comes into the possession of the served party hours, minutes or seconds after service does not revive the voided process. *See Reibor Int'l Ltd. v. Cargo Carriers (KACZ–CO.) Ltd.*, 759 F.2d 262 (2d Cir.1985). The *Reibor* Court noted that its ruling "minimizes the burden of remaining vigilant" that is imposed upon the garnishee, typically a financial intuition. 759 F.2d at 267.[1] The *Reibor* rule honors the quasi-in-rem characteristic of maritime attachment, which requires the presence of some item of property of the defendant in the hands of the garnishee as a basis for jurisdiction over the defendant's interest in that property.

■ The question in this case is not whether there is an exception to the requirement that process and a *res* must coexist in the hands of the garnishee at a single moment in time; undeniably, that is a necessity. Rather, the question is whether, based upon the agreement between counsel for the garnishor and garnishee, process served on the morning of August 25 remained effective throughout the business day. The defendant has a direct interest in the question of whether jurisdiction over his interest in property has been acquired, but that does not give him a seat at the table on all issues relating to the service of process. For ex-

1. The Court observed that a contrary rule "could force New York banks clearing foreign fund exchanges in U.S. dollars through CHIPS to search high and low for a period of up to twenty days to determine whether any transfer related to a maritime process of attachment or garnishment." 759 F.2d at 268.

ample, Rule E(3)(c) provides that the "[i]ssuance and delivery of process ... of maritime attachment and garnishment shall be held in abeyance if the plaintiff so requests." Defendant in its memoranda makes no claim that Citibank was powerless to consent to service by facsimile so as to avoid inconvenience to itself of calls to (or from) a lobby security desk announcing the anticipated (or actual) arrival of the process server. Just as the garnishee was free to avoid the burden of in-person service by agreeing to service by fax, so too was it capable of agreeing that it would deem process effective through the close of the business day. I see nothing in the Supplemental Rules, the Federal Rules of Civil Procedure or my order of August 17 that forecloses such an agreement. With process in place from the moment of service by fax at 9:33 a.m. on August 25 to the close of that business day, there was both valid Process of Maritime Attachment and a *res* capable of being attached at the point in time that the *res* passed through the hands of Citibank.

■ Americas Bulk raises other contentions in support of its application. Rule B(1)(a) requires that the defendant be "not found in the district...." Americas Bulk asserts that it was "found" in the district and hence the application for attachment ought never have been granted. A defendant is considered "found in the district" if the defendant has sufficient contacts with the district to support *in personam* jurisdiction and can be served with process within the district. *Winter Storm*, 310 F.3d at 268. Here, the second requirement is not met. At one time, Americas Bulk was licensed to do business in New York, but that licensing lapsed. Americas

Bulk now argues that even though its licensing lapsed, it designated an agent for service of process and that designation should be deemed to survive. But, examining the actual filing with the Secretary of State, there appears to be no separate designation of an agent for service of process. The Secretary was the designated by operation of law. True, there is the designation of the "[a]ddress to which DOS [Department of State] will mail process if accepted on behalf of the entity" but, by its own terms, that is not the equivalent of the designation of an agent for service of process. There can be no serious dispute that the Secretary of State's authority to accept service lapses when the corporation ceases to be licensed to do business in the state, and that this is true even if, in violation of the licensing requirement, the corporation continues to do business. *See Green v. Clark*, 173 F.Supp. 233 (S.D.N.Y.1959). I conclude that Americas Bulk could not be found within the District because it could not be served within the District.

■ Next, Americas Bulk argues that even if the Process of Maritime Attachment became effective on August 25 when certain EFTs were attached, it ceased to have effect as to any property that came into Citibank's hands on or after August 26, the date after it entered a notice of general appearance in this action. It argues, on the basis of that appearance, that it is now "found" in the district. But once there is property that has been levied upon, further process need not be served. *See Reibor*, 759 F.2d at 268 ("a levy, once effective, remains effective for at least ninety days....").[2] The subsequent appearance had no effect in eviscerating the already effective attachment, including its post-levy effects. *Cf. Freeport–McMoRan*,

---

**2.** Americas Bulk appears to argue, alternatively, that the effective period ought to be the twenty days that the Supp. Rules provide for a garnishee to answer, Rule B(3)(a), rather than the ninety days set forth in CPLR 6214(b). I do not need to decide that question at this juncture.

*Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428, 111 S.Ct. 858, 860, 112 L.Ed.2d 951 (1991) (*per curiam*) ("time of filing" rule for subject matter jurisdiction).

■ Americas Bulk also asserts that the EFTs were not "tangible or intangible, personal property ... in the hands of the garnishe[e] ..." Rule B(1)(a). It bases this argument on the fact that the transferred funds were intended as payment to a third-party and passed from its account at the Bank of Bermuda, the originating bank, through Citibank, as intermediary bank. It asserts that the funds ceased to belong to it and became the property of the intended beneficiaries once it left Bank of Bermuda. In *Winter Storm,* the Court held that "an EFT while it takes the form of a bank credit at an intermediary bank is clearly a seizable *res....*" 310 F.3d at 277 (*quoting United States v. Daccarett,* 6 F.3d 37, 55 (2d Cir.1993) (invoking Rule C of the Supp. Rules in a drug forfeiture case)). Indeed, the EFT at issue in *Winter Storm* arose out of an attempted payment by the defendant to a third party; the funds had left the defendant's account at the foreign originating bank and were levied upon at the intermediary bank. 310 F.3d at 266.

Finally, Americas Bulk seeks an order requiring Ythan to post security under Rule E(7). That Rule that provides that security on a counterclaim must be given unless the court for cause shown directs otherwise. In exercising this discretion, this court should be guided primarily by two principles. First, the purpose of Rule E(7) is to place the parties on an equal footing in regard to security, which "usually favors granting countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction ...." and, second, that the "Rule is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit."

*Result Shipping Co., Ltd. v. Ferruzzi Trading USA Inc.,* 56 F.3d 394, 399–400 (2d Cir.1995). The court is "to be guided by the essential and equitable purposes of the rule. In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection." *Id.* at 400. Here, in response to less than $600,000 in attachments on a $20 million claim, defendant seeks to require plaintiff to post $6.5 million in security on claims totaling that amount. I decline to require security on the cargo indemnity claim ($4,400,000) because the claim is highly contingent and Ythan has already posted security for claims brought directly by the cargo owners against it. The fact that a claim against Americas Bulk by the cargo owners for which Americas Bulk may seek to hold Ythan liable may not be entirely foreclosed does not mean that there is a serious prospect of such liability. The claim of an overpaid charter hire ($141,572.09) and the lost freight claim on a charter to Primetrade AG ($1,900,000) stands on a different footing. Having due regard for the factors in *Result Shipping* and a review of the strength of the claims and the defenses thereto, I will direct that security be given in the amount of $700,000.

*Conclusion*

I find no basis to vacate the attachment and defendant's application under Rule E(4)(f) is DENIED. The application under Rule E(7) for security on defendant's counterclaim is GRANTED to the extent of $700,000.

SO ORDERED.